## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMUNITY DRUGSTORE, LLC,<br>an Arizona Limited Liability Company,<br>17233 N. Holmes Boulevard<br>Phoenix, AZ 85053<br><br>       Plaintiff,<br><br>       v.<br><br>CARDINAL HEALTH 110, INC.,<br>formerly known as WHITMIRE<br>DISTRIBUTION CORPORATION,<br>a Delaware Corporation,<br>c/o Corporation Service Company<br>2711 Centerville Road Suite 400<br>Wilmington, DE 19808<br><br>       Defendant. | **Civil Action No. _____**<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Plaintiff, Community Drugstore, LLC ("Community Drugstore"), hereby brings this Complaint and demands judgment against Defendant, Cardinal Health 110, Inc., formerly known as Whitmire Distribution Corporation ("Cardinal Health"), and in support of its request for relief, avers as follows:

**NATURE OF THE ACTION**

1.     This is an action for breach of contract, defamation, and trade disparagement and corresponding temporary, preliminary, and permanent injunctive relief necessary to prevent Cardinal Health from driving Community Drugstore out of business by blithely breaking its contractual obligation to supply Community Drugstore with prescription medicines regulated as controlled substances and by advising other wholesalers that it was refusing to deal with Community Drugstore in a manner calculated to lead them to conclude Community Drugstore had engaged in suspicious or illicit activities.    Despite its contract to supply Community Drugstore's primary requirements for pharmaceuticals, Cardinal Health has unilaterally refused to supply controlled substances to Community Drugstore and thereby breached its contractual obligations.    While Community Drugstore was finally able to locate an alternate pharmaceutical supplier, because that supplier limits orders of narcotic pharmaceuticals by new customers, Community Drugstore remains unable to obtain all of its requirements of pharmaceuticals for the indefinite future.    This will continue to prevent Community Drugstore from filling all of its customers' prescriptions and cause irreparable harm to Community Drugstore and its reputation and goodwill.    Therefore, as set forth more fully below, Community Drugstore requests that the Court grant it temporary, preliminary, and permanent injunctive relief and award it damages for Cardinal Health's breach of contract and tortious conduct.

**THE PARTIES**

2.     Community Drugstore is an Arizona limited liability company with its principal place of business at 17233 N. Holmes Boulevard, Phoenix, Arizona 85053.

3.    Cardinal Health is a Delaware corporation with its principal place of business, upon information and belief, at 7000 Cardinal Health Place, Dublin, Ohio 43017.

## JURISDICTION AND VENUE

4.    Subject matter jurisdiction is proper in this Court based on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between Community Drugstore, as plaintiff, and Cardinal Health, as defendant, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    The Court has personal jurisdiction over Cardinal Health because it is incorporated in Delaware and, upon information and belief, it regularly transacts business in this District and regularly contracts to supply services and things in Delaware.

6.    Venue lies in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1391 (a)(3) and (c) because Cardinal Health is incorporated in and transacts business in this District and is subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL COUNTS

7.    Community Drugstore is an independent pharmacy company that operates pharmacies at two locations in Arizona. One store is located at 17233 N. Holmes Boulevard, Phoenix, Arizona, and the other store is located at 777 W. Southern Street, Mesa, Arizona. The Phoenix store was opened in July 2006 and the Mesa store was opened in November 2007.

8.    Community Drugstore is licensed under the Controlled Substances Act and state law to dispense controlled substances, including narcotics.

9.     Community Drugstore is a specialty pharmacy that focuses on managing the needs of patients suffering from chronic or debilitating pain.  As such 65% of the drugs dispensed by Community Drugstore are class 2 drugs, meaning that they are narcotics that are considered to be controlled substances.   10% of the medicines dispensed by Community Drugstore are class 3-5 drugs, meaning that they are not narcotics but are nonetheless controlled substances.  The remainder of the drugs dispensed are not controlled substances.

10.     Community Drugstore is the only pharmacy in the Phoenix/Mesa area that carries certain drugs.

11.     Community Drugstore is a member pharmacy of American Associated Druggists, Inc. d/b/a United Drugs ("United Drugs"), which is not a party to this litigation.  United Drugs is a cooperative composed of more than 1000 independent pharmacists nationwide.  It affords the buying power of a large organization in purchasing wholesale pharmaceuticals for retail distribution by its members, and it provides its members other related contractual services. Importantly, membership in United Drugs gives pharmacies the ability to receive insurance reimbursement for prescriptions.

12.     On or about December 14, 2005, United Drugs entered into a Prime Vendor Agreement with Cardinal Health under which United Drugs' member pharmacies agreed to use Cardinal Health as their primary wholesale pharmaceutical supplier and Cardinal Health agreed to supply United Drugs' member pharmacies' requirements for pharmaceuticals.  (Prime Vendor Agreement § 1, ¶ 1.)  A copy of the Prime Vendor Agreement is not attached to this Complaint because it has been designated confidential by the contracting parties, and given the need for

4

prompt action, Community Drugstore has not yet had the opportunity to resolve confidentiality concerns.

13.     Cardinal Health is a wholesaler of pharmaceuticals and medical supplies to pharmacies.

14.     As one of United Drugs' member pharmacies, Community Drugstore is an intended third-party beneficiary of the Prime Vendor Agreement, and indeed, Community Drugstore was required to sign a Member Certification with respect to the Prime Vendor Agreement.

15.     The Prime Vendor Agreement principally requires United Drug member pharmacies, including Community Drugstore, to purchase their primary requirements of pharmaceuticals exclusively from Cardinal Health. (Prime Vendor Agreement § 2, ¶ 1.)  It defines "primary requirements" as requiring that member pharmacies purchase at least 95% of their pharmaceuticals from Cardinal Health and also purchase more than specified minimum quantities of certain generic pharmaceuticals from Cardinal Health. (*Id.*)

16.     Pursuant to the Prime Vendor Agreement, Community Drugstore has access to certain discounts and price advantages for pharmaceuticals.

17.     The Prime Vendor Agreement provides that it is effective from December 20, 2005 through December 31, 2015, subject to the right of either party to effect an early termination upon "the occurrence of a material breach by the other party." (*Id.* § 17.)

18.     Prior to an early termination, the breaching party must be afforded an opportunity to cure the complained-of breach:

> The non-breaching party must give written notice to the breaching
> party of the occurrence of such breach. The notice must describe
> in detail the nature of the breach. The breaching party will have
> the opportunity to cure its breach, to the reasonable satisfaction of
> the non-breaching party, during a sixty (60) day period beginning
> on the date the breaching party receives the written notice (the
> "Cure Period") or, if such breach is of a nature that it cannot be
> cured in sixty (60) days, has the opportunity to commence and
> diligently prosecute in good faith the cure of such breach within
> the Cure Period.

(*Id.*)

19.    If the breaching party does not cure or begin to cure its breach within the Cure

Period, only then may an early termination of the Agreement be effected:

> If the breach is not cured by the expiration of the Cure Period, or
> the breaching party has not begun the cure process if it cannot be
> cured in sixty (60) days, then the non-breaching party may provide
> written notice to the breaching party that this Agreement will be
> terminated in thirty (30) days following the expiration of the Cure
> Period.

(*Id.*)

20.    The Prime Vendor Agreement also permits Cardinal Health to unilaterally

terminate its contractual relationship with a United Drugs member pharmacy only under very

limited circumstances for nonpayment or similar issues:

> Notwithstanding the foregoing, with respect to payment defaults
> by a Member or other credit considerations deemed relevant to
> Cardinal health with respect to a Member, Cardinal Health may
> terminate this Agreement immediately as to such Member.

(*Id.*)

21.    As it specializes in pain management, Community Drugstore dispenses a greater

percentage of narcotic pharmaceuticals than other similar pharmacies. Community Drugstore's

product mix, however, has always been the same since its inception in July 2006. Community Drugstore does not sell any pharmaceuticals over the internet.

22.    Since Community Drugstore's first branch opened in July 2006, Cardinal Health has been fully aware of the nature of Community Drugstore's business, including that it dispenses higher volumes of its controlled substances than most pharmacies. Cardinal Health reviewed and audited the controlled substances distribution procedures in place at Community Drugstore's branches on several occasions and never found any problems or improper procedures.

23.    Cardinal Health encouraged Community Drugstore to open its Mesa store and to purchase certain equipment for the two stores at a cost of more than $500,000. Cardinal Health also gave a high line of credit to Community Drugstore to encourage expansion.

24.    Upon information and belief, the United States Drug Enforcement Administration ("DEA") suspended Cardinal Health's license to distribute controlled substances from certain of its distribution centers in late November and early December 2007 because it had not followed a reasonable compliance program, and therefore, continued to ship controlled substances to pharmacies that may have diverted them to illicit purposes.

25.    In response to the DEA's enforcement action, Cardinal Health did not implement a reasonable compliance program but rather, on December 6, 2007, Cardinal Health sent an email to Community Drugstore after the close of business stating that it was instituting an arbitrarily-set "strict limit" on all orders of controlled substances starting December 7, 2007.

26.     Community Drugstore objected to this strict limitation both via telephone and e-mail.

27.     Cardinal Health thereafter orally informed Community Drugstore on or about December 7, 2007 and by letter on or about December 11, 2007, just weeks after Community Drugstore opened its Mesa location at Cardinal Health's urging, that it would no longer supply controlled substances to Community Drugstore.  (A true and correct copy of that letter is attached as Exhibit "A.")

28.     The December 11, 2007 letter stated, in relevant part:

> Our evaluation of your pharmacy suggests there is a risk that diversion [of controlled substances not for legitimate medical prescription purposes] will occur if we continue to fill your controlled substance orders.   As a result of this evaluation, Cardinal Health will no longer supply controlled substances to your pharmacy.

29.     Neither the December 7, 2007 oral notification, nor the December 11, 2007 letter did set forth a valid substantive basis to cease supplying Community Drugstore with controlled substances in that the Prime Vendor Agreement does not permit early termination based upon an unsubstantiated concern of a risk that there has been the diversion of controlled substances. Further, Community Drugstore has not engaged in the diversion of controlled substances for illicit purposes.

30.     Upon information and belief, Cardinal Health discontinued shipments to Community Drugstore simply because it elected not to implement a reasonable compliance program and instead decided to cease supplying all pharmacies that sold more than an arbitrarily-set volume of controlled substances.

31.     Cardinal Health's notice of termination was also improper in that it did not provide notice of the alleged breach and 60 days to cure or begin to cure. It similarly did not provide 30 days notice of Cardinal Health's intent to terminate for failure of Community Drugstore to cure or begin to cure during the 60-day Cure Period.

32.     Upon information and belief, based on conversations with the DEA, Cardinal Health has not reported any perceived wrongdoing by Community Drugstore to the DEA. If there were any indication of such wrongdoing, Cardinal Health would be required to report it.

33.     Community Drugstore's license under the Controlled Substances Act remains in force, and it has never knowingly dispensed pharmaceuticals without prescriptions or upon illicit prescriptions. It dispenses a high volume of narcotics solely because of its legitimate focus in pain management. It enjoys a pristine reputation with the DEA.

34.     To Plaintiff's knowledge and information, the DEA has not and is not considering any enforcement action against Community Drugstore.

35.     Cardinal Health made a public notification of its refusal to supply Community Drugstore, as a result of which other wholesalers and suppliers will not deal with Community Drugstore. Namely, Cardinal Health made public statements, which either Cardinal Health or the DEA communicated to other pharmaceutical wholesalers, that Cardinal Health had ceased distributing controlled substances to Community Drugstore. This notice was sent in a manner calculated to indicate that the reason Cardinal Health had ended the supply relationship was that Community Drugstore may have been diverting controlled substances to illegitimate purposes.

36. Following transmittal of the December 11, 2007 letter, Cardinal Health ceased supplying controlled substances to Community Drugstore's Phoenix store and is supplying its Mesa branch with only very limited controlled substances.

37. Because of Cardinal Health's refusal to supply Community Drugstore with controlled substances, Community Drugstore no longer has sufficient pharmaceuticals in stock to fill prescriptions for its customers.

38. Community Drugstore's customers consist in large part of individuals who have been prescribed pain management regimes by their treating physicians, and accordingly, a substantial part of the pharmaceuticals Community Drugstore dispenses are controlled substances used for pain management.

39. Community Drugstore's customers will suffer substantial harm and pain if they are unable to fill their prescriptions, particularly those customers on properly prescribed pain management regimes.

40. Upon Cardinal Health's termination, Community Drugstore promptly began looking to find a replacement supplier of controlled substances so as to be able to fill its customers' prescriptions, but was unable to immediately secure a replacement supplier. Community Drugstore has been informed that the reason several of the other distributors will not sell to Community Drugstore is because Cardinal Health terminated Community Drugstore in a manner that appeared to be for diverting controlled substances.

41. After substantial effort, Community Drugstore was finally able to consummate a new supply agreement with non-party AmerisourceBergen. However, AmerisourceBergen has

advised Community Drugstore that, according to its controlled substance distribution plan, as mandated and approved by the DEA, it significantly limits the volume of narcotic pharmaceuticals it will supply to new customers until it becomes familiar with the new customers' business and sales volume.

42.    Additionally, it is impossible for a pharmacy to rely on a single source of pharmaceuticals because there are often circumstances when a distributor has outages of particular products, which a pharmacy must then purchase from an alternate supplier.

43.    Even though Community Drugstore has now obtained an alternate supply of pharmaceuticals from AmerisourceBergen, given its limitations on supplies to new customers, Community Drugstore remains unable to obtain its full requirements of pharmaceuticals and narcotic pharmaceuticals for the indefinite future.

44.    Community Drugstore will be unable to resupply or fill its customers' prescriptions and will be required to provide only a limited quantity of a prescribed medicines to them.    As customers are denied service by Community Drugstore, they will turn to other pharmacies and not return to Community Drugstore, particularly in that Community Drugstore's inability to service its customers confirms the misimpression that it has engaged in improper conduct caused by Cardinal Health's notice of termination.    This inevitable drain on Community Drugstore's customer base threatens its survival.

45.    On or about December 14, 2007, Cardinal Health for the first time advised Community Drugstore that it was accelerating an appeals process to remove the ban on supplying it with controlled substances.

46.     This action in no manner cures or alleviates Cardinal Health's breach in that the Prime Vendor Agreement does not permit Cardinal Health to cease supplying Community Drugstore with controlled substances pending an appeal, there is no reference whatsoever to an appeals process in the Prime Vendor Agreement, Cardinal Health made no mention of an appeals process until nearly a week after it stopped supplying Community Drugstore, Community Drugstore has sustained and will continue will suffer irreparable harm to its goodwill and reputation while the purported appeals process continues and Community Drugstore will likely fails during the time period that the appeals process is pending.

## COUNT I
### (Breach of Contract)

47.     Community Drugstore incorporates the averments of the preceding paragraphs as though fully set forth herein.

48.     United Drugs and Cardinal Health entered into a legally binding and enforceable Prime Vendor Agreement.

49.     As a United Drugs member pharmacy, Community Drugstore is an intended third-party beneficiary of the Prime Vendor Agreement.

50.     Cardinal Health is not excused from its contractual obligation to supply Community Drugstore simply because of its own compliance concerns and without any evidence that Community Drugstore has engaged in any illicit sales of controlled substances. Indeed, the fact that Cardinal Health has not reported any such wrongdoing to the DEA, as it would be required to do if any such wrongdoing had occurred, indicates that Cardinal Health is fully aware that it has no basis to assert any wrongdoing by Community Drugstore.

51.    Cardinal Health has encouraged Community Drugstore to increase the volume of pharmaceuticals it purchases from Cardinal Health, and encouraged its expansion, all the while knowing full well of the product mix and nature of Community Drugstore's business. Indeed, until December 6, 2007, Cardinal Health never raised any issue whatsoever with respect to Community Drugstore.

52.    Cardinal Health breached the Prime Vendor Agreement by refusing to supply Community Drugstore's primary requirements of controlled substances and by failing to provide the contractually-mandated notice of default.

53.    The breach is a material breach and goes to the heart of the parties' bargain.

54.    As a direct and proximate result of Cardinal Health's breach, Community Drugstore has been forced to purchase controlled substances from another vendor at costs in excess of the contract price with Cardinal Health and without the benefit of discounts and rebates provided by Cardinal Health.

55.    As a direct and proximate result of Cardinal Health's breach of contract, Community Drugstore has suffered severe business losses, including lost sales, harm to its customer relationships, and a loss of goodwill.

56.    Community Drugstore has made all reasonable efforts to secure an alternate supplier of controlled substances so that it can continue to fill its customers' prescriptions and has located an alternate supplier—AmerisourceBergen—for some of its requirements of controlled substances.

57.     Notwithstanding Community Drugstore's efforts and its supply agreement with AmerisourceBergen, it has been unable to consummate an alternate supply agreement sufficient to satisfy all of its requirements of controlled substances for the indefinite future.

58.     Community Drugstore's inability to obtain a supplier of all of its requirements of controlled substances for the indefinite future has and will continue to cause it to be unable to fill all customer prescriptions, and this will cause irreparable harm to Community Drugstore in the form of damage to reputation, lost customer relationships and goodwill and substantial damage to Community Drugstore's ability to continue business as a going concern.

59.     Such irreparable harm cannot be recompensed by money damages.

60.     Community Drugstore's customers—particularly the majority of its customers who are on prescribed pain management treatment regimes—will moreover suffer pain and harm by being unable to fill their prescriptions.

61.     Cardinal Health, by contrast, would suffer no harm in continuing to supply Community Drugstore's requirements of pharmaceuticals above and beyond the portion of such requirements now being supplied by AmerisourceBergen until such time as Community Drugstore can obtain its full requirements of pharmaceuticals from AmerisourceBergen.

WHEREFORE, plaintiff, Community Drugstore, LLC, demands judgment in its favor and against Defendant, Cardinal Health 110, Inc., for compensatory damages in an amount to be proven at trial, and for temporary, preliminary, and permanent injunctive relief prohibiting Cardinal Health from enforcing its termination of its supply relationship with Community Drugstore and its notice of termination, together with interest and costs of suit, including attorneys' fees, and such further relief as the Court deems to be just and proper.

## COUNT II
### (Defamation)

62.    Community Drugstore incorporates the averments of the preceding paragraphs as though fully set forth herein.

63.    Cardinal Health made public statements that were communicated to other suppliers that it had ceased distributing controlled substances to Community Drugstore. The statements were made in a manner that caused these suppliers to understand, and was calculated to cause those suppliers to understand, that it had ended the supply relationship because it had reason to believe Community Drugstore was diverting controlled substances for illegitimate purposes.

64.    Cardinal Health made these statements without any factual basis for concluding that Community Drugstore was diverting controlled substances for illegitimate purposes and with full knowledge that Community Drugstore enjoys a pristine reputation with the DEA and that the DEA has not and is not considering any enforcement action against Community Drugstore.

65.    Cardinal Health made these statements willfully and maliciously and pursuant to a conscious plan to avoid adopting a reasonable compliance program after the DEA's suspension of Cardinal Health's licenses to distribute controlled substances from some distribution centers for failing to implement a compliance program.

66.    The defamatory statements impugn Community Drugstore's character and reputation as a business.

67.     The defamatory statements were widely published among pharmaceutical manufacturers, suppliers and wholesalers.

68.     As a direct and proximate result of Cardinal Health's defamatory statements, Community Drugstore has suffered substantial damage to its goodwill with customers, suppliers, potential customers, and potential suppliers in an amount to be proven at trial.

69.     As a direct and proximate result of Cardinal Health's defamatory statements, Community Drugstore has suffered severe business losses, including lost sales, harm to its customer relationships, and a loss of goodwill.

WHEREFORE, plaintiff, Community Drugstore, LLC, demands judgment in its favor and against Defendant, Cardinal Health 110, Inc., for compensatory damages in an amount to be proven at trial, punitive damages and temporary, preliminary and permanent injunctive relief prohibiting Cardinal Health from enforcing its termination of its supply relationship with Community Drugstore and its notice of termination, together with interest and costs of suit, including attorneys' fees, and such further relief as the Court deems to be just and proper.

## COUNT III
### (Trade Disparagement)

70.     Community Drugstore incorporates the averments of the preceding paragraphs as though fully set forth herein.

71.     Cardinal Health's derogatory and defamatory public statements to other pharmaceutical wholesalers that it was no longer distributing controlled substances to Community Drugstore disparage Community Drugstore's services and business practices because they expressly state or imply that there is good grounds to believe Community Drugstore

has been diverting controlled substances for illegitimate purposes in contravention of federal and state law.

72.    Cardinal Health's statements were false and misleading.

73.    Cardinal Health made such derogatory and disparaging statements with knowledge, and/or with reckless disregard, of their falsity.

74.    Cardinal Health's derogatory and disparaging statements about the quality of Community Drugstore's services and business practices negatively affected Community Drugstore's business relationships with its customers, potential customers, suppliers and potential suppliers and deterred them from associating or dealing with Community Drugstore. It has also negatively affected the marketability of Community Drugstore's goods and services.

75.    Cardinal Health's statements were not privileged.

76.    As a direct and proximate result of Cardinal Health's defamatory statements, Community Drugstore has suffered substantial damage to its goodwill with customers, suppliers, potential customers and potential suppliers in an amount to be proven at trial.

77.    As a direct and proximate result of Cardinal Health's defamatory statements, Community Drugstore has suffered severe business losses, including lost sales, harm to its customer relationships and a loss of goodwill.

WHEREFORE, Plaintiff, Community Drugstore, LLC, demands judgment in its

favor and against Defendant, Cardinal Health 110, Inc., for compensatory damages in an amount

to be proven at trial, punitive damages and temporary, preliminary and permanent injunctive

relief prohibiting Cardinal Health from enforcing its termination of its supply relationship with

Community Drugstore and its notice of termination, together with its costs of suit, including

attorneys' fees and such further relief as the Court deems just and proper.


Dated:  December 17, 2007

_David A. Felice_
Sean Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
sbellew@cozen.com
dfelice@cozen.com

*Counsel for Plaintiff,*
*Community Drugstore, LLC*


OF COUNSEL:
Robert W. Hayes, Esq.
Sarah E. Davies, Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
215-665-2000

**EXHIBIT A**

Dec 11 07 07:11a     Dan Martincic                              480-584-3727              p.1

Cardinal Health
600 N. 83rd Avenue
Tolleson, Az 85353
main     623.478.6500

www.cardinal.com



**Cardinal**Health

Dear Customer,

As a Drug Enforcement Administration ("DEA") registrant, Cardinal Health is required by law to have adequate controls in place to guard against the diversion of controlled substances. We take these responsibilities very seriously as the security of the pharmaceutical supply chain and the safety of patients is among our highest priorities. We also work diligently to comply with all applicable laws and regulations governing distribution.

Recently, the DEA has instituted an initiative requiring distributors and wholesalers to proactively investigate customers and assist the DEA with preventing diversion. The DEA considers it to be the responsibility of distributors and wholesalers to perform due diligence of its customers to understand the customer's business and ensure that the customer is only dispensing prescriptions issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. One factor the DEA has defined as potentially indicative of diversion is the ordering of large quantities of controlled substances.

Using the DEA guidelines as a base, Cardinal Health evaluates customers whose orders of controlled substances have reached threshold limits and then looks at other criteria including but not limited to frequency of controlled substance purchases, product mix and prescription volume. We then make a determination, based on the totality of the factors evaluated, whether continuing to supply a customer poses a risk that diversion will occur. In addition, a customer that poses such a risk creates a situation where the DEA could take action against Cardinal Health.

**Our evaluation of your pharmacy suggests there is a risk that diversion will occur if we continue to fill your controlled substance orders. As a result of this evaluation, Cardinal Health will no longer supply controlled substances to your pharmacy.**

Cardinal Health is committed to providing a safe and secure pharmaceutical supply chain. We appreciate your understanding as we make these difficult decisions in order meet our obligations under the Controlled Substances Act.

Sincerely,

Eric Brantley
Director Quality and Regulatory Affairs

Steve Reardon:  614-757-7101 (Reg Compliance)
Eric Brantley:  614-757-5624   (Reg Compliance)
Jeff Bennet:  614-757-5132  (Legal)
Corey Goldsand: 614-757-5811 (Legal)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THIS FORM.)

## I. (a) PLAINTIFFS
COMMUNITY DRUGSTORE, LLC, an Arizona Limited Liability Company

## DEFENDANTS
CARDINAL HEALTH 110, Inc., formerly known as WHITMIRE DISTRIBUTION CORPORATION, a Delaware Corporation

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Maricopa County, Arizona
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  New Castle County, Delaware
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Sean J. Bellew, Esquire, Cozen O'Connor, Chase Manhattan Centre, 1201 North Market Street, Suite 1400, Wilmington, DE  19801
(302) 295-2000

ATTORNEYS (If Known)
unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 4  DIVERSITY (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☒ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury-- Med Malpractice
☐ 365 Personal Injury-- Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting &Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332

Brief description of cause:
Breach of contract, defamation, trade disparagement, & injunctive relief case arising from breach of pharmaceutical supply contract.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ in excess of $75,000
Check YES only if demanded in complaint:
JURY DEMAND:  ☒ YES  ☐ NO

## VIII. RELATED CASES(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE
December 17, 2007

SIGNATURE OF ATTORNEY OF RECORD
_David A. Felice_

## FOR OFFICE USE ONLY

RECEIPT# _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**        Example:        U.S. Civil Statute: <u>47 USC 553</u>
                        Brief Description: <u>Unauthorized reception of cable service</u>

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ___ 0 7 - 8 2 4 __

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

12-17-07
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

Shane Handlin
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action