## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COMMUNITY DRUGSTORE, LLC,
an Arizona Limited Liability Company,
17233 N. Holmes Boulevard
Phoenix, AZ 85053

   Plaintiff,

  v.            **Civil Action No. _____**

CARDINAL HEALTH 110, INC.,
formerly known as WHITMIRE    **JURY TRIAL DEMANDED**
DISTRIBUTION CORPORATION,
a Delaware Corporation,
c/o Corporation Service Company
2711 Centerville Road Suite 400
Wilmington, DE 19808

   Defendant.

---

## MOTION OF PLAINTIFF COMMUNITY DRUGSTORE LLC FOR
## A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
## PURSUANT TO FED. R. CIV. P. 65
## AGAINST DEFENDANT CARDINAL HEALTH 110, INC.

Plaintiff Community Drugstore LLC ("Community Drugstore"), by its undersigned counsel, respectfully moves this Court for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 against Defendant Cardinal Health 110, Inc. ("Cardinal Health"), prohibiting Cardinal Health from breaching its supply contract and ceasing to supply Community Drugstore with controlled substances. As a pharmacy dedicated to the supply of pharmaceuticals to its customers that are necessary for pain management treatment, Community Drugstore will be irreparably harmed if Cardinal Health is permitted to disregard its contractual obligations and

unilaterally and in bad faith fail to supply the medications. In support of its Motion, Community Drugstore avers as follows:

1.    Community Drugstore is an independent, specialty pharmacy company that operates pharmacies at two locations in Arizona. One pharmacy is located at 17233 N. Holmes Boulevard, Phoenix, Arizona, and the other at 777 W. Southern Street, Mesa, Arizona.

2.    Community Drugstore's primary business is filling prescriptions for individuals on pain management regimes prescribed by their treating physicians. Approximately 75% of the drugs sold by Community Drugstore are controlled substances. 65% of the drugs sold are narcotics and 10% of the drugs sold are non-narcotic controlled substances. Approximately 10-15% of Community Drugstore's business is for the sale of controlled substances used by physicians to wean patients from other narcotics.

3.    Community Drugstore is a member pharmacy of American Associated Druggists, Inc. d/b/a United Drugs ("United Drugs"), which is not a party to this litigation. United Drugs is a cooperative composed of more than 1000 independent pharmacists nationwide. It affords the buying power of a large organization in purchasing wholesale pharmaceuticals for retail distribution by its members, and it provides its members other related contractual services. As a member, Community Drugstore is also eligible for reimbursement by insurance companies.

4.    Cardinal Health is a large global corporation that provides various support services and products to the health care community. Among other things and of relevance to this case, Cardinal Health supplies pharmaceuticals and medical supplies to pharmacies.

5.    On or about December 14, 2005, United Drugs entered into a Prime Vendor Agreement with Cardinal Health under which Cardinal Health agreed to supply United Drugs' members with their pharmaceutical products and those members were bound to use Cardinal Health as their primary wholesale pharmaceutical supplier. (Prime Vendor Agreement § 1, para. 1.) A copy of the Prime Vendor Agreement is not attached hereto because it has been

designated confidential by the contracting parties, and given the need for prompt action, Community Drugstore has not yet had the opportunity to resolve confidentiality concerns.

6.    As one of United Drugs' member pharmacies, Community Drugstore is an intended third-party beneficiary of the Prime Vendor Agreement.

7.    The Prime Vendor Agreement requires United Drugs' member pharmacies, including Community Drugstore, to purchase their primary requirements of pharmaceuticals exclusively from Cardinal Health. (*Id.* § 2, para. 1.) It defines "primary requirements" as requiring that member pharmacies purchase at least 95% of their pharmaceuticals from Cardinal Health and also purchase more than specified minimum quantities of certain generic pharmaceuticals from Cardinal Health. (*Id.*)

8.    The term of the Prime Vendor Agreement commenced as of December 20, 2005 and continues in effect through December 31, 2015. (*Id.* § 17.)

9.    Since July 2006 when it opened for business, Community Drugstore has been supplied with its requirements of controlled substances by Cardinal Health. Cardinal Health has been fully aware since July 2006 of the nature of Community Drugstore's business, and that fact that it dispenses higher volumes of controlled substances than other pharmacies based on the nature of its specialty.

10.    Until December 2007, Cardinal Health had sought to expand its business relationship with Community Drugstore and encouraged it to open new stores and purchase expensive equipment. Cardinal Health has never questioned Community Drugstore's compliance with Drug Enforcement Administration ("DEA") regulations, and upon information and belief, has never reported any irregularity to DEA.

11.    In late November 2007, DEA suspended the licenses of some of Cardinal Health's divisions as a result of failures to report suspect transactions by certain of the pharmacies it supplied as required by DEA regulations.

12.    Rather than adopt a reasonable compliance program, on December 6, 2007, Cardinal Health imposed a strict limit on the amount of controlled substances pharmacies

may purchase, effective on December 7, 2007. This limitation had a severe impact on Community Drugstore because of the specialized nature of its business.

13.     Cardinal Health orally informed Community Drugstore on or about December 7, 2007 and by letter on or about December 11, 2007 that it would no longer supply controlled substances to it. (A copy of that letter is attached as Exhibit "A.")

14.     The December 11, 2007 letter stated, in relevant part:

> Our evaluation of your pharmacy suggests there is a risk that diversion [of controlled substances not for legitimate medical prescription purposes] will occur if we continue to fill your controlled substance orders. As a result of this evaluation, Cardinal Health will no longer supply controlled substances to your pharmacy.

15.     The letter was directed to "Customer" and not directly to Community Drugstore. Upon information and belief, Cardinal Health delivered the same or similar letters to several customers at the same time.

16.     Upon information and belief, and based on conversations with DEA, Cardinal Health has never reported any irregularities relating to Community Drugstore to DEA, as would be required if such irregularities were known or suspected. Community Drugstore is aware of no allegations of wrongdoing against it by the DEA.

17.     Cardinal Health has not provided any explanation for this sudden action, and did not allow Community Drugstore an opportunity to secure another supply source before taking this action.

18.     Cardinal Health has ceased supplying controlled substances to one of Community Drugstore's stores and is supplying the other store with only very limited volume of controlled substances.

19.     Cardinal Health reported the termination to DEA. The fact of Community Drugstore's termination was communicated to other pharmaceutical suppliers either by DEA or Cardinal.

20. This action has damaged Community Drugstore's reputation in the community and with its customers, medical providers and other pharmaceutical suppliers because it imputes improper conduct on the part of Community Drugstore that would justify such an action when, in fact, there is no such justification. As a result, Community Drugstore is having extraordinary difficulty in locating a new supplier on such short notice.

21. The only manufacturer or supplier that has agreed to supply Community Drugstore is AmerisourceBergen. However, pursuant to its own regulatory compliance program, AmerisourceBergen will only supply Community Drugstore for an indefinite period with limited quantities of the controlled substances Community Drugstore legitimately dispenses. Further, it is impossible to rely on a single source of supply because there are often circumstances when a distributor has outages of particular types of medicine and a pharmacy must purchase from an alternative supplier.

22. On or about December 14, 2007, Cardinal Health for the first time advised Community Drugstore that it was accelerating an appeals process to remove the ban on supplying it with controlled substances.

23. This action in no manner cures or alleviates Cardinal Health's breach in that the Prime Vendor Agreement does not permit Cardinal Health to cease supplying Community Drugstore with controlled substances pending an appeal.

24. There is no reference whatsoever to an appeals process in the Prime Vendor Agreement and Cardinal Health made no mention of an appeals process until nearly a week after it stopped supplying Community Drugstore.

25. Community Drugstore has sustained and will continue will suffer irreparable harm to its goodwill and reputation while the purported appeals process continues and Community Drugstore will likely fail during the time period that the appeals process is pending.

26. As a direct and proximate result of the interruption and limitation on its supply of controlled substances, Community Drugstore will be unable to resupply or fill its

customers' prescriptions and will be required to provide only a limited quantity of prescribed medicines to them. As customers are denied service by Community Drugstore, they will turn to other pharmacies and not return to Community Drugstore, particularly in that Community Drugstore's inability to service its customers confirms the misimpression caused by Cardinal's notice of termination that it has engaged in improper conduct. This inevitable drain on Community Drugstore's customer base threatens its survival.

27.     Community Drugstore's customers will suffer substantial harm and pain if they are unable to fill their prescriptions, particularly those customers on properly prescribed pain management regimes. In addition, for those customers who require drugs that are only sold through Community Drugstore, the needed medications will simply not be available.

WHEREFORE, for the reasons set forth herein and in the accompanying Memorandum of Law and attached Declaration of Jeffrey Gubernick, which are incorporated herein, Community Drugstore respectfully requests that the Court enter a Preliminary Injunction prohibiting Cardinal Health from failing to supply Community Drugstore with its pharmaceutical needs until such time as Community Drugstore can locate a new supply source.

Dated:  December 17, 2007

David A. Felice

Sean Bellew (#4072)
David A. Felice (#4090)
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
sbellew@cozen.com
dfelice@cozen.com
*Counsel for Plaintiff, Community Drugstore, LLC*

OF COUNSEL:
Robert W. Hayes, Esq.
Sarah E. Davies, Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
215-665-2000

- 6 -

## **CERTIFICATION**

Counsel for Plaintiff Community Drugstore LLC consulted with Defendant Cardinal Health 110, Inc. pursuant to District of Delaware Local Rule 7.1.1 and determined that Defendant was not in a position to agree to the relief requested in the preceding Motion.

David A. Felice (#4090)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| COMMUNITY DRUGSTORE, LLC, <br> an Arizona Limited Liability Company, <br> 17233 N. Holmes Boulevard <br> Phoenix, AZ 85053 <br><br>        Plaintiff, <br><br>    v. <br><br> CARDINAL HEALTH 110, INC., <br> formerly known as WHITMIRE <br> DISTRIBUTION CORPORATION, <br> a Delaware Corporation, <br> c/o Corporation Service Company <br> 2711 Centerville Road Suite 400 <br> Wilmington, DE 19808 <br><br>        Defendant. | **Civil Action No.** _____ <br><br> **JURY TRIAL DEMANDED** |

## ORDER

AND NOW, this \_\_\_ day of December 2007, upon consideration of the Motion Of Plaintiff Community Drugstore LLC For A Temporary Restraining Order and Preliminary Injunction Pursuant To Fed. R. Civ. P. 65 Against Defendant Cardinal Health 110, Inc., any response thereto and any argument by counsel, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that Defendant Cardinal Health 110, Inc. is enjoined from terminating the supply of controlled substances to Community Drugstore LLC until such time as Community Drugstore is able to locate a new supplier.

                                    _____
                                                 , J.

**EXHIBIT A**

Cardinal Health
600 N. 83rd Avenue
Tolleson, Az  85353
main   623.478.6500

www.cardinal.com



**Cardinal**Health

Dear Customer,

As a Drug Enforcement Administration ("DEA") registrant, Cardinal Health is required by law to have adequate controls in place to guard against the diversion of controlled substances.  We take these responsibilities very seriously as the security of the pharmaceutical supply chain and the safety of patients is among our highest priorities. We also work diligently to comply with all applicable laws and regulations governing distribution.

Recently, the DEA has instituted an initiative requiring distributors and wholesalers to proactively investigate customers and assist the DEA with preventing diversion. The DEA considers it to be the responsibility of distributors and wholesalers to perform due diligence of its customers to understand the customer's business and ensure that the customer is only dispensing prescriptions issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. One factor the DEA has defined as potentially indicative of diversion is the ordering of large quantities of controlled substances.

Using the DEA guidelines as a base, Cardinal Health evaluates customers whose orders of controlled substances have reached threshold limits and then looks at other criteria including but not limited to frequency of controlled substance purchases, product mix and prescription volume.  We then make a determination, based on the totality of the factors evaluated, whether continuing to supply a customer poses a risk that diversion will occur. In addition, a customer that poses such a risk creates a situation where the DEA could take action against Cardinal Health.

**Our evaluation of your pharmacy suggests there is a risk that diversion will occur if we continue to fill your controlled substance orders. As a result of this evaluation, Cardinal Health will no longer supply controlled substances to your pharmacy.**

Cardinal Health is committed to providing a safe and secure pharmaceutical supply chain.  We appreciate your understanding as we make these difficult decisions in order meet our obligations under the Controlled Substances Act.

Sincerely,

Eric Brantley
Director Quality and Regulatory Affairs

Steve Reardon:  614-757-7101 (Reg Compliance)
Eric Brantley:  614-757-5624   (Reg Compliance)
Jeff Bennet:  614-757-5132  (Legal)
Corey Goldsand:  614-757-5811 (Legal)

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COMMUNITY DRUGSTORE, LLC,                    :
an Arizona Limited Liability Company,        :
17233 N. Holmes Boulevard                    :
Phoenix, AZ 85053                            :
                                             :
    Plaintiff,           :
                                             :
   v.                         :      Civil Action No. _____
                                             :
                                             :
CARDINAL HEALTH 110, INC.,                   :
formerly known as WHITMIRE                   :
DISTRIBUTION CORPORATION,                    :
a Delaware Corporation,                      :
c/o Corporation Service Company             :
2711 Centerville Road Suite 400             :
Wilmington, DE 19808                         :
                                             :
    Defendant.           :      **JURY TRIAL DEMANDED**

## DECLARATION OF JEFFERY GUBERNICK
### PURSUANT TO 28 U.S.C. § 1746
### IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Jeffrey Gubernick, hereby declare as follows:

   1.  I am the President of Community Drugstore, LLC. I have personal knowledge of the matters set forth in this Declaration.

   2.  Community Drugstore is an independent, specialty pharmacy company that operates pharmacies at two locations in Arizona. One branch is located at 17233 N. Holmes Boulevard, Phoenix, Arizona, and the other branch is located at 777 W. Southern Street, Mesa, Arizona.

   3.  I started Community Drugstore in July 2006 when I opened the Phoenix store. Prior to starting the company, I was a pharmacist at CVS. Many of my customers, especially the senior citizens, have been my customers for over ten years. I have over thirty years experience as a pharmacist.

Dec-14-2007  04:36pm   From-Cozen O'Connor 5th Floor                    215-665-2013           T-516   P.003/007   F-494

4.      The Phoenix store is located adjacent to a Pain Management Clinic known as Phoenix Pain Management. I have been told that the Phoenix Pain Management is a model Clinic for the Drug Enforcement Administration ("DEA") because of its high levels of compliance with drug laws. Dr. Chirban, the director of the Pain Management Clinic, is a well-known and well-respected physician. Part of his practice is assisting his patients in weaning off of narcotics, and in doing so he often prescribes Suboxone and Subutex, which are the two major controlled substances used for such purposes. 10-15% of Community Drugstore's business involves these and similar drugs that help people wean off narcotics.

5.      Community Drugstore's primary business is filling prescriptions for individuals on pain management regimes prescribed by their treating physicians. Approximately 65% of the drugs we sell are class 2 drugs, meaning that they are narcotics and they are considered controlled substances by the DEA. Approximately 10% of the drugs we sell are class 3-5 drugs, meaning that they are not narcotics but are nonetheless controlled substances. The remaining 25% of the drugs we sell are not controlled substances. Certain controlled substances are available in Phoenix and Mesa only through our pharmacy.

6.      To my knowledge and information, Community Drugstore is not under investigation by the DEA and we have had no issues with DEA compliance. Community Drugstore does not sell controlled substances on the internet, and has a pristine reputation regarding its compliance with DEA regulations. This reputation is important to Community Drugstore's customers and the medical community.

7.      Community Drugstore is a member pharmacy of American Associated Druggists, Inc. d/b/a United Drugs ("United Drugs"). United Drugs is a cooperative composed of more than 1000 independent pharmacists nationwide. It affords the buying power of a large organization in purchasing wholesale pharmaceuticals for retail distribution by its members, and it provides its members other related contractual services. In particular, because of our association with United Drugs, we are able to receive insurance reimbursement for prescriptions.

- 2 -

8.      Because we are members of United Drugs, we are required by United Drugs to purchase substantially all of our drugs (95%) from Cardinal Health pursuant to a Prime Vendor Agreement.

9.      Since we opened in July 2006, Cardinal Health has been supplying Community Drugstores with the drugs it requires, including controlled substances.

10.     Since we opened in July 2006, Cardinal Health has been fully aware of the nature of Community Drugstore's business, including that it dispenses higher volumes of its controlled substances than most pharmacies. Cardinal Health reviewed and audited the controlled substances distribution procedures in place at our branches on several occasions and never found any problems or improper procedures.

11.     Cardinal Health has also encouraged me to expand Community Drugstore's business. At Cardinal Health's prompting, Community Drugstore opened its second store in Mesa in November 2007. We also purchased two Scriptpro Robotics Systems and two Suite RX computer systems for the two stores at Cardinal Health's prompting. These items required significant investment of over $500,000. We made this investment in reliance on Cardinal Health's promise to help support our business.

12.     In late November 2007, I became aware that Cardinal Health was being investigated by the DEA for violations of the Controlled Substances Act. Some of Cardinal Health's divisions licenses were suspended by DEA in late November and in December as a result of the distribution problems that were found.

13.     On December 6, 2007, I received an e-mail from Scott Laws of Cardinal Health attaching a letter from Tom DeGemmis, Senior Vice President of Retail Independent Accounts at Cardinal Health. I have attached the e-mail as Exhibit A. In the e-mail, Cardinal Health stated that it was placing a "strict limit" on orders of select controlled substances starting on December 7, 2007.

14.     A strict limit of controlled substances has a crippling impact on Community Drugstore's business, given that 75% of our business is in controlled substances.

- 3 -

15.    I had numerous telephone calls with Cardinal Health over the next several days, explaining the problems we would have with such a limitation, expressing my outrage and sense of betrayal and requesting assistance. I also responded to the email on December 9, 2007, putting in writing what I had been saying for days. A copy of my email response is attached as Exhibit B.

16.    On Monday, December 10, 2007, I sent another email to Mr. Laws, informing him that we had filled close to 500 prescriptions that day, explaining to him the particular challenges we, and our customers, were facing as a result of Cardinal Health's actions, and describing the fact that I was unable to service some of my customers. A copy of my email is attached as Exhibit C.

17.    On or about December 11, 2007, Cardinal Health informed Community Drugstore by letter that it would no longer supply controlled substances to Community Drugstore. A copy of the letter is attached as Exhibit D.

18.    The December 11, 2007 letter stated, in relevant part:

> Our evaluation of your pharmacy suggests there is a risk that diversion [of controlled substances not for legitimate medical prescription purposes] will occur if we continue to fill your controlled substance orders. As a result of this evaluation, Cardinal Health will no longer supply controlled substances to your pharmacy.

19.    Community Drugstore's product mix has not changed since it opened in July 2006. At all times up to this month, Cardinal Health has been supportive of Community Drugstore's business, has raised no questions or concerns regarding the product mix and, in fact, has actively encouraged Community Drugstore to expand.

20.    It is my understanding that Cardinal Health delivered the same or similar letters to other customers at the same time.

21.    I have personally called the DEA and have been informed that Community Drugstore is not under any investigation or limitation by the DEA.

- 4 -

22.     Cardinal Health has not provided any explanation for this sudden action, and has not allowed Community Drugstore an opportunity to secure another supply source before taking this action.  Although the sales representatives from Cardinal Health have told me personally that there is no basis for the action taken by their company, since December 11, 2007 Cardinal Health has not supplied me with controlled substances at the Phoenix location, and has provided only limited controlled substances at the Mesa location.

23.     Upon receipt of this notice, Community Drugstore immediately sought to purchase its supply of prescription drugs that are regulated as controlled substances from other suppliers including ANDO Pharmaceuticals and VIP.  However, when it terminated Community Drugstore, Cardinal Health gave notice of this action to the DEA, and either Cardinal Health or the DEA advised all other pharmaceutical manufacturers and suppliers of this action.  As a result, no company other than AmerisourceBergen will supply Community Drugstore with prescription drugs regulated as controlled substances.

24.     However, pursuant to its own regulatory compliance program, AmerisourceBergen will only initially supply Community Drugstore with limited quantities of the controlled substances Community Drugstore legitimately dispenses.

25.     Additionally, it is impossible to rely on a single source of supply because there are often circumstances when a distributor has outages of particular types of medicine and a pharmacy must purchase from an alternative supplier.

26.     As a result of Cardinal Health's actions, Community Drugstore no longer has sufficient controlled substances in stock to fill prescriptions for its customers and it will not be able to obtain a sufficient supply of controlled substances to meet customer demand within the foreseeable future.

27.     Community Drugstore will be unable to resupply or fill its customers' prescriptions and will be required to provide only a limited quantity of a prescribed medicines to them.  As customers are denied service by Community Drugstore, they will turn to other pharmacies and not return to Community Drugstore, particularly in that Community Drugstore's

inability to service its customers confirms the misimpression caused by Cardinal Health's notice of termination that it has engaged in improper conduct. This inevitable drain on Community Drugstore's customer base threatens its survival.

28.    Community Drugstore's customers consist in large part of individuals who have been prescribed pain management regimes by their treating physicians, and accordingly, a substantial part of the pharmaceuticals Community Drugstore dispenses are pain management pharmaceuticals. These customers will suffer substantial harm and pain if they are unable to fill their prescriptions.

I declare under penalty of perjury that the foregoing is true and correct and is stated upon my personal knowledge. Executed on December 14, 2007.

_____
Jeffrey Gubernick

# EXHIBIT A

**From:** Laws, Scott [mailto:scott.laws@cardinalhealth.com]
**Sent:** Thursday, December 06, 2007 9:53 PM
**To:** jeffgubernick@cox.net
**Subject:** Cardinal

Jeff,

**Cardinal**Health

Dear Customer,

As you know, Cardinal Health is registered with the DEA to handle and distribute controlled substances. While the Drug Enforcement Agency (DEA) has traditionally taken a diligent approach in its investigative activities, it recently has begun to take more significant enforcement-related steps in terms of the pharmaceutical supply chain especially in conjunction with sales made by wholesale distributors to customers that dispense controlled substances.  As such, this has necessitated additional steps be taken on the part of Cardinal Health.

Patient safety is among Cardinal Health's highest priorities, and we are committed to providing a safe and secure pharmaceutical supply chain. We take these responsibilities very seriously, and work diligently to comply with all applicable laws and regulations governing distribution.

As a result, we are introducing a program that will place a strict limit on orders to certain classes of retail pharmacies – effective **Friday, December 7** – on select controlled substances.   As a result,  if you place an order for these drugs that exceeds our controlled substance limit, you order will be reduced.

While this is a dramatic step, we are introducing two new programs to help secure the supply chain <u>and</u> minimize the disruption so that customers may order controlled substances up to the guideline.

1. First, we will pilot a technological solution that will allow customers to place an order up to the guideline limit but not beyond. We will then evaluate the business for future orders.

   We will pilot this program at one distribution center in the next 10 days, and will put it in place by the end of December at <u>all</u> Cardinal Health distribution centers for select controlled substances.

   By the end of January, we will implement the automatic limiter program in <u>all</u> distribution centers for <u>all</u> classes of controlled substances.

2. We are also developing a new training program for our sales team to help them better understand our customers and know how to work with them on these issues.

We appreciate your business and look forward to our continued partnership. Thank you for your understanding.

Sincerely,


Tom DeGemmis
Senior Vice President
Retail Independent Accounts

**EXHIBIT B**

## Jeff Gubernick

**From:** Jeff Gubernick [jeffgubernick@cox.net]
**Sent:** Sunday, December 09, 2007 12:46 PM
**To:** 'gonzalesa@UNITEDDRUGS.COM'
**Subject:** FW: Cardinal

**From:** Jeff Gubernick [mailto:jeffgubernick@cox.net]
**Sent:** Sunday, December 09, 2007 8:42 AM
**To:** 'Laws, Scott'
**Subject:** RE: Cardinal

Dear Scott; Thanks for keeping me up with the situation. Dan said he will be working on this all day Monday. I hope he is able to remedy the problem. That being said, I cannot believe how unprofessionally cardinal has handled this situation. I feel that they panicked and totally disregarded the welfare of some accounts. I realize that some of your divisions were closed due to illegal or irregular activities, and that cardinal was responsible for allowing it to happen. My situation was totally different. We run one of the most up to date clean and professional pharmacies in the country. Do we dispense controlled substances in large volume?absolutely. We also have tons of war vets, paraplelegic and accident victims. Along with their pain meds they also receive all of the non controlled meds that they are on. Anti nausea drugs, antianxiety, antidepressive, bibolar meds, antihistamine, antibiotics, minds meds and much more. Our non controlled volume is also very high. Part of our practice also deals with getting patients off of pain medications when that is possible. Dr chirban is world renowned on withdrawal and suboxone and subutex use. Our pharmacy has become one of the primary sources for other physicians and professionals that have questions about pain management and pharmaceuticals. We are a preceptor of Mid Western University for the students to learn and grow in their studies. We are monthly sent technicians from Apollo and Bryans for student training. Like I have mentioned before I challenge the DEA or any other agency to find any wrong doing or illegal activity in either location. You and many other representatives at cardinal from Dan, Brian, and on up have been totally aware of our operation since the first day. You all have been in the pharmacy, in the back, and have met with myself and all employees many times. I was assured at the show that cardinal would always stand behind me and would never let me down. Business is business, however I cannot put into words the amount of betrayal and irreversible damage that cardinal wholesale has done. We were all aware that someday we may have to answer some questions about community pharmacy. We were also aware that because of the clean and professional way business was done that there would never be a problem. I have always welcomed anyone to come into the pharmacy with open arms, including the dea, state board, or any other agency. To all of your executives who participated in this decision making process to save their ass, I say it was the most unprofessional, selfish, least strategic, and thought out solution that I have ever heard. I have owned pharmacies for over thirty years and have seen many things in our industry, but I have never seen a major pharmaceutical company basically say screw you to their accounts and leave then basically out of business. Why could they not just limit orders? Why did they just not do an immediate investigation of each account in question? I could think of many other ways that this could have and should have been handled. In conclusion, I hope that United and the Apha and all other pharmacy groups are made aware of the way cardinal placed no value in their accounts and put their welfare totally above anything with total disregard of what would happen to their accounts. Like I told Dan they gladly took my money for sixteen months without question, probably about two millions dollars. But when push came to shove that did not give a damn what this was going to do to my business or me personally.

Your friend,   Jeff Gubernick

**EXHIBIT C**

**Jeff Gubernick**

**From:**    Jeff Gubernick [jeffgubernick@cox.net]
**Sent:**    Monday, December 10, 2007 9:53 PM
**To:**    'Laws, Scott'
**Subject:** cardinal

Dear Scott; Today we filled close to five hundred prescriptions. One of my last patients was a recent war vet who lost basically his right side. His wife has excellent insurance so there is no need for him to go to the veteran's hospital where he feels very uncomfortable. He brought in six prescriptions oxycontin 80mg and oxycodone 15mg for his pain, trazadone for sleep, promethazine for his nausea, seroquel probably for his regression back to his bad experience, and alprazolam an anti anxiety agent. These are pretty much the same meds he comes in with every month. I always look at the patient list the night before and have never been out of his meds. Well of course I did not have his pain meds because it was the end of the day and I was more worried all week end about having any meds at all. I never looked at the list on Friday, I was too preoccupied. I tried to explain that Cardinal did not fulfill their obligation to service my pharmacy and honor their contract. I guess that I was looking to pass the responsibility of taking care of this patient some where else. I am telling you this because his response was somewhat mind awakening. He said where is your responsibility to take care of my pharmaceutical needs. He asked me if I had to take an oath to service my patients. He said that since I had over the past year established a relationship with him he always felt confident that I would have his meds. He stated he got tired of other pharmacies looking at him like he was a drug addict or was doing something wrong. He had stopped going to chains because they had to always order his meds and his waiting time was hours. I had to ask him to go elsewhere. I was not sure if I will have his meds tomorrow. I started to think, did cardinal or anyone ever give any thought to all of the patients? Of course community pharmacy will be hurt by all of this but how about all of the people that relied on our pharmacy because we treat everyone like human beings. How about all of the people that I do not charge because they do not have the money. And selfishly how do I provide for my family and my employees if I do not get my orders. What I am mostly trying to say do you think in the overall scheme of things that any thought was given to what effect cardinal doing what they did would have on people? I truly believe that we are providing a necessary health specialty service. I enjoy my patients I find them to be more respectful and appreciative then the work that I have done in the past. Well we will see what Tuesday brings. By the way Dan called me tonight. No good news.

Thanks for letting me vent; Jeff

**EXHIBIT D**

Dec 11 07 07:11a    Dan Martincic                                480-584-3727                    p.1

Cardinal Health
600 N. 83rd Avenue
Tolleson, Az 85353
main    623.478.6500

www.cardinal.com



Dear Customer,

As a Drug Enforcement Administration ("DEA") registrant, Cardinal Health is required by
law to have adequate controls in place to guard against the diversion of controlled
substances.   We take these responsibilities very seriously as the security of the
pharmaceutical supply chain and the safety of patients is among our highest priorities.
We also work diligently to comply with all applicable laws and regulations governing
distribution.

Recently, the DEA has instituted an initiative requiring distributors and wholesalers to
proactively investigate customers and assist the DEA with preventing diversion. The
DEA considers it to be the responsibility of distributors and wholesalers to perform due
diligence of its customers to understand the customer's business and ensure that the
customer is only dispensing prescriptions issued for a legitimate medical purpose by an
individual practitioner acting in the usual course of his or her professional practice. One
factor the DEA has defined as potentially indicative of diversion is the ordering of large
quantities of controlled substances.

Using the DEA guidelines as a base, Cardinal Health evaluates customers whose orders
of controlled substances have reached threshold limits and then looks at other criteria
including but not limited to frequency of controlled substance purchases, product mix
and prescription volume.  We then make a determination, based on the totality of the
factors evaluated, whether continuing to supply a customer poses a risk that diversion
will occur. In addition, a customer that poses such a risk creates a situation where the
DEA could take action against Cardinal Health.

**Our evaluation of your pharmacy suggests there is a risk that diversion will occur
if we continue to fill your controlled substance orders.  As a result of this
evaluation, Cardinal Health will no longer supply controlled substances to your
pharmacy.**

Cardinal Health is committed to providing a safe and secure pharmaceutical supply
chain.  We appreciate your understanding as we make these difficult decisions in order
meet our obligations under the Controlled Substances Act.

Sincerely,

Eric Brantley
Director Quality and Regulatory Affairs

Steve Reardon:  614-757-7101 (Reg Compliance)
Eric Brantley:  614-757-5624  (Reg Compliance)
Jeff Bennet:  614-757-5132  (Legal)
Corey Goldsand: 614-757-5811 (Legal)