## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMUNITY DRUGSTORE, LLC,<br>an Arizona Limited Liability Company,<br>17233 N. Holmes Boulevard<br>Phoenix, AZ 85053<br><br>       Plaintiff,<br><br>       v.<br><br>CARDINAL HEALTH 110, INC.,<br>formerly known as WHITMIRE<br>DISTRIBUTION CORPORATION,<br>a Delaware Corporation,<br>c/o Corporation Service Company<br>2711 Centerville Road Suite 400<br>Wilmington, DE 19808<br><br>       Defendant. | **Civil Action No. _____**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF COMMUNITY DRUGSTORE LLC'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION FOR A TEMPORARY
## RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT
## TO FED. R. CIV. P. 65 AGAINST DEFENDANT CARDINAL HEALTH 110, INC.

Dated: December 17, 2007

OF COUNSEL:
Robert W. Hayes, Esq.
Sarah E. Davies, Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
215-665-2000

Sean Bellew (#4072)
David A. Felice (#4090)
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
sbellew@cozen.com
dfelice@cozen.com
*Counsel for Plaintiff,*
*Community Drugstore, LLC*

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II.   SUMMARY OF ARGUMENT ....................................................................................... 3

III.  FACTUAL BACKGROUND ........................................................................................... 4

IV.   ARGUMENT ................................................................................................................... 8

   A.   Community Drugstore Can Establish A Reasonable Probability Of Success On The
        Merits ......................................................................................................................... 8

   B.   Community Drugstore Will Be Irreparably Injured If The Preliminary Injunction Is
        Denied ...................................................................................................................... 11

   C.   Granting Preliminary Relief Will Not Result In Greater Harm To Cardinal Health ........ 15

   D.   Granting Preliminary Relief Is In The Public's Interest .................................................. 15

V.    CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

2660 Woodley Road Joint Venture, v. ITT Sheraton Corp.,
No. 97-450, 1998 U.S. Dist. LEXIS 22825 (D. Del. Feb. 4, 1998)....................................8, 14

Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.,
875 F.2d 1174 (5th Cir. 1989) ...............................................................................13

Byrne v. Calastro,
205 Fed. Appx. 10 (3d Cir. 2006) .........................................................................14

Carlson v. Hallinan,
925 A.2d 506 (Del. Ch. 2006).................................................................................9

Ecri v. McGraw-Hill, Inc.,
809 F.2d 223 (3d Cir. 1987) .................................................................................11

Gerardi v. Pelullo,
16 F.3d 1363 (3d Cir. 1994)...................................................................................8

Gilbane Bldg. Co. v. Nemours Found.,
568 F. Supp. 1085 (D. Del. 1983)...........................................................................8

Greyhound Lines, Inc. v. Peter Pan Bus Lines, Inc.,
845 F. Supp. 295 (E.D. Pa. 1994) .........................................................................12

In re: Arthur Treacher's Franchisee Litig.,
689 F.2d 1137 (3d Cir. 1982)................................................................................8

In Re: Ben Franklin Hotel Assoc.,
186 F.3d 301 (3d Cir. 1999) .................................................................................12

Johnson v. Geico Cas. Co.,
2007 U.S. Dist. LEXIS 72618 (D. Del. Sept. 27, 2007)..............................................8

L&W Ins., Inc. v. Harrington,
No. Civ.A. 2730-VCP, 2007 WL 809512 (Del. Ch. Mar. 12, 2007) .......................13

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,
290 F.3d 578 (3d Cir. 2002)..................................................................................13

Novus Franchising, Inc. v. Taylor,
795 F. Supp. 122 (M.D. Pa. 1992) .........................................................................10

Olde Discount Corp. v. Tupman,
805 F. Supp. 1130 (D. Del. 1992)...........................................................................8

Opticians Ass'n of Am. v. Indep. Opticians of Am.,
    920 F.2d 187 (3d Cir. 1990) ....................................................................................14

Performance Unlimited, Inc. v. Questar Publishers, Inc.,
    52 F.3d 1373 (6th Cir. 1995) .................................................................................13

Singh v. Batta Envtl. Assoc., Inc.,
    No. Civ. A. 19627, 2003 WL 21309115 (Del. Ch. May 21, 2003) ........................13

Somerset Pharm., Inc. v. Shalala,
    973 F. Supp. 443 (D. Del. 1997) ...........................................................................14

Tristate Courier & Carriage, Inc. v. Berryman,
    No. C.A. 20574-NC, 2004 WL 835886 (Del. Ch. Apr. 15, 2004) .........................13

Toys "R" Us-Penn Inc. v. Discovery Zone, Inc.,
    No. 95-2534, 1996 U.S. Dist. LEXIS 1183 (E.D. Pa. Feb. 6, 1996) ......................12

Warren v. City of Athens, Ohio,
    411 F.3d 697 (6th Cir. 2005) .................................................................................13

## I.    NATURE AND STAGE OF PROCEEDINGS

On December 17, 2007, Plaintiff Community Drugstore, LLC ("Community Drugstore") initiated this action by filing a Complaint in the United States District Court for the District of Delaware against Defendant Cardinal Health 110, Inc. ("Cardinal Health"). This is Community Drugstore's opening brief in support of its Motion for a Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65 of the Federal Rules of Civil Procedure against Cardinal Health ("Motion").

Through the presently pending Motion, Community Drugstore, seeks to prevent the irreparable harm it is suffering as a result of Cardinal Health's unconscionable decision to cease supplying it with prescribed medicines regulated under federal law as controlled substances solely to avoid adopting a reasonable compliance program as required by the Drug Enforcement Administration ("DEA").    Under DEA requirements, pharmaceutical manufacturers and suppliers are required to adopt reasonable compliance programs designed to identify pharmacies that might be diverting controlled substances to illicit uses.  Recently, the DEA suspended the registrations of several of Cardinal Health's distribution centers or branches for failing to follow a reasonable compliance program as a result of which it apparently was supplying pharmacies, including internet pharmacies, engaged in the illegal sales of controlled substances.  Rather than cure the deficiencies in its compliance program, Cardinal Health terminated without notice or warning numerous pharmacies, including Community Drugstore, that sold in excess of arbitrary designated volumes of controlled substances.

In terminating Community Drugstore, Cardinal Health breached its written agreement to supply plaintiff with, at least, 95% of the pharmaceuticals its requires through 2015.  Cardinal Health did so even though Community Drugstore has not engaged in any illicit sales of controlled substances and is not under investigation by the DEA, and solely because Community

Drugstore sells a relatively high volume of narcotics and other controlled substances due to its specialty in pain management. Cardinal Health does not, and has no basis to, believe that Community Drugstore is engaging in suspicious sales or practices. In fact, Cardinal Health has previously reviewed Community Drugstore without finding any issue and had encouraged it to expand its business and open another location.

Not content to simply breach its contract, Cardinal Health gave notice to the DEA of Community Drugstore's termination as if it were being terminated for suspicious activity. This notice was circulated to other suppliers, which caused all pharmaceutical manufacturers and distributors, other than AmerisourceBergen, to refuse to supply Community Drugstore with controlled substances. As Community Drugstore is a new customer, pursuant to its own compliance programs, AmerisourceBergen will initially only supply Community Drugstore with limited quantities of controlled substances. As a result, unless this Court requires Cardinal Health to honor its contractual obligations and rescind its notice of termination, Community Drugstore will not be able to meet the needs of its customers, will lose a significant portion of customer base and likely will fail.

While courts do not lightly grant preliminary injunctive relief to enforce contractual obligations, this equitable remedy is used sparingly in contract actions because the injured party can usually obtain the services or products at issue from another supplier, resulting only in a potential monetary loss. However, when the subject of the contract is unique or cannot readily be provided by another, such as real estate or covenants not to compete, courts have not hesitated to grant equitable relief. The instant matter falls into this category because, as a result of the unique market involved and the manner in which Cardinal Health sought to terminate it, Community Drugstore cannot obtain substitute products. Moreover, the inability to obtain

- 2 -

products to carry on its primary business threatens Community Drugstore's customer relationships and its very existence, which clearly qualify as irreparable harm.

Community Drugstore's Motion for a Temporary Restraining Order and Preliminary Injunction should be granted and Cardinal Health should be prohibited *pendite lite* from enforcing its purported termination notice or from refusing to sell the quantities of controlled substances with which it previously supplied Community Drugstore.

## II.    SUMMARY OF ARGUMENT

1.    Community Drugstore can establish all of the necessary elements for the Court to issue a preliminary injunction and enjoin Cardinal Health from terminating its supply of controlled substances to Community Drugstore.

2.    Community Drugstore will succeed on the merits as there is no question that Cardinal Health was obligated to supply Community Drugstore with its requirements for controlled substances through 2015 and there is no basis to terminate this relationship simply because Community Drugstore sells more than an arbitrarily selected volume of controlled substances.    Further, Cardinal Health's notice of termination was defamatory and disparaged Community Drugstore's services as it was issued under circumstances that caused other suppliers to understand that there was a reasonable basis to suspect it of diverting controlled substances.

3.    Community Drugstore will be irreparably harmed unless the Court issues the preliminary injunction and enjoins Cardinal Health from taking such drastic and immediate measures because it cannot continue in business without a supply of the products upon which its operations are based.    Further, its inability to supply patients with needed medications is damaging its goodwill and customer relationships as patients will fill their prescriptions at other pharmacies and may never return to Community Drugstore.    As a result of Cardinal Health's notice of termination, Community Drugstore has not and will not be able to locate an adequate alternate source of supply for the immediate future.

4.    Granting Community Drugstore's motion will not result in greater harm to Cardinal Health, because Cardinal Health will be able to continue to put into place reasonable protections to ensure that it complies with the Controlled Substances Act.  Finally, an injunction is in the public interest.

5.    Accordingly, this Court should issue a preliminary injunction to enjoin Cardinal Health from terminating its supply of controlled substances to Community Drugstore and for enforcing its notice of termination.

## III.    FACTUAL BACKGROUND

Community Drugstore is an independent, specialty pharmacy company that operates pharmacies at two locations in Arizona.  Its primary business is filling prescriptions for individuals on pain management regimes prescribed by their treating physicians.  (Declaration of Jeffrey Gubernick, attached to the Motion as Exhibit B, at ¶¶ 2, 5.)  Approximately 65% of the drugs that Community Drugstore sells are narcotics, which are considered to be controlled substances.  Ten percent of the drugs are non-narcotic controlled substances.  (Gubernick Dec. at ¶ 5.)  In addition, approximately 10-15% of the medications sold by Community Drugstore are drugs that are meant to wean patients from other narcotics.  (Gubernick Dec. at ¶ 4.)

Community Drugstore is a member pharmacy of American Associated Druggists, Inc. d/b/a United Drugs ("United Drugs").  (Gubernick Dec. at ¶ 7.)   United Drugs is a cooperative composed of more than 1000 independent pharmacists nationwide.  It affords the buying power of a large organization in purchasing wholesale pharmaceuticals for retail distribution by its members, and it provides its members other related contractual services.  (Id.)

Cardinal Health supplies pharmaceuticals and medical supplies to pharmacies.  On or about December 14, 2005, it entered into a Prime Vendor Agreement with United Drugs to service as the primary wholesale pharmaceutical supplier to all of its members.  (Prime Vendor

Agreement § 1, ¶ 1.)[1]  The Prime Vendor Agreement requires United Drugs' member pharmacies, including Community Drugstore, to purchase their primary requirements of pharmaceuticals exclusively from Cardinal Health. (Prime Vendor Agreement, § 2, ¶ 1.)  It defines "primary requirements" as the purchase of at least 95% of their pharmaceuticals and of more than specified minimum quantities of certain generic pharmaceuticals from Cardinal Health. (Id.)  Community Drugstore is required to purchase its pharmaceuticals from Cardinal Health in order to participate in United Drugs' third-party insurance programs. (Prime Vendor Agreement, § 1.)

Since it opened in July 2006, Community Drugstore has obtained its supply of controlled substances from Cardinal Health. (Gubernick Dec. at ¶ 9.)  Cardinal Health has at all times been fully aware of the nature of Community Drugstore's business, and has, in fact, encouraged Community Drugstore to expand and purchase expensive equipment. (Id. at ¶ 10, 11.)  As a result, Community Drugstore opened a second store in Mesa, Arizona.

In late November 2007, Cardinal Health was investigated by the Drug Enforcement Administration ("DEA") for violations of the Controlled Substances Act.  As a result of the investigation, DEA suspended the licenses of certain Cardinal Health divisions apparently because their failure to implement and follow a reasonable compliance program had resulted in their continued sale of products to pharmacies allegedly involved in the illicit sale of controlled substances. (Id. at ¶ 12.)

Rather than adopt and follow a reasonable compliance program, Cardinal Health simply imposed an arbitrarily designated "strict limit" on the amount of controlled substances pharmacies could receive. (Id. at ¶ 13.)  Given the nature of Community Drugstore's business, this limit was crippling. (Id. at ¶ 14.)  Then, on or about December 7, 2007, Cardinal Health

[1]A copy of the Prime Vendor Agreement is not attached hereto because it has been designated confidential by the contracting parties, and given the need for prompt action, Community Drugstore has not yet had the opportunity to resolve confidentiality concerns.

orally informed Community Drugstore that it would no longer supply it with controlled

substances, and followed the oral termination with a letter on December 11, 2007. (A copy of

the letter is attached as Exhibit "A" to the Motion.) The December 11, 2007 letter stated, in

relevant part:

> Our evaluation of your pharmacy suggests there is a risk that
> diversion [of controlled substances not for legitimate medical
> prescription purposes] will occur if we continue to fill your
> controlled substance orders.    As a result of this evaluation,
> Cardinal Health will no longer supply controlled substances to
> your pharmacy.

The letter was directed to "Customer" and not directly to Community Drugstore. Cardinal

Health delivered the same or similar letters to other customers at the same time. (Gubernick

Dec. at ¶ 20.)

Cardinal Health has not provided any explanation for this sudden action, and has not

allowed Community Drugstore an opportunity to secure another supply source before taking this

action. Community Drugstore is aware of no allegations of wrongdoing against it by the DEA,

and Cardinal Health has not reported any irregularities. (Gubernick Dec. at ¶ 23.) Cardinal

Health has ceased supplying controlled substances to one of Community Drugstore's stores and

is supplying the other store with only very limited pharmaceuticals. (Id. at ¶ 21.)

Upon receipt of this notice, Community Drugstore immediately sought to purchase its

supply of prescription drugs that are regulated as controlled substances from other suppliers.

However, when it terminated Community Drugstore, Cardinal Health gave notice of this action

to the DEA and either Cardinal Health or the DEA advised all other pharmaceutical

manufacturers and suppliers of this action.    As a result, no company other than

AmerisourceBergen will supply Community Drugstore with prescription drugs regulated as

controlled substances. (Gubernick Dec. at ¶ 22.)    However, pursuant to its own regulatory

compliance program, AmerisourceBergen will only initially supply Community Drugstore with

- 6 -

limited quantities of the controlled substances Community Drugstore legitimately dispenses. (Id., ¶ ) Further, it is impossible to rely on a single source of supply because there are often circumstances when a distributor has outages of particular types of medicine and a pharmacy must purchase from an alternative supplier. (Id.)

The results of Cardinal Health's actions are severe. Community Drugstore no longer has sufficient controlled substances in stock to fill prescriptions for its customers and it will not be able to obtain a sufficient supply of controlled substances to meet customer demand within the foreseeable future. (Gubernick Dec. at ¶ 25.) Community Drugstore will be unable to resupply or fill its customers' prescriptions and will be required to provide only a limited quantity of prescribed medicines to them. As customers are denied service by Community Drugstore, they will turn to other pharmacies and not return to Community Drugstore, particularly in that Community Drugstore's inability to service its customers confirms the misimpression caused by Cardinal's notice of termination that it has engaged in improper conduct. This inevitable drain on Community Drugstore's customer base threatens its survival.

On or about December 14, 2007, Cardinal Health for the first time advised Community Drugstore that it was accelerating an appeals process to remove the ban on supplying it with controlled substances. This action in no manner cures or alleviates Cardinal Health's breach in that the Prime Vendor Agreement does not permit Cardinal Health to cease supplying Community Drugstore with controlled substances pending an appeal. There is no reference whatsoever to an appeals process in the Prime Vendor Agreement and Cardinal Health made no mention of an appeals process until nearly a week after it stopped supplying Community Drugstore. Moreover, Community Drugstore has sustained and will continue will suffer irreparable harm to its goodwill and reputation while the purported appeals process continues. Community Drugstore will likely fail during the time period that the appeals process is pending.

Community Drugstore's customers consist in large part of individuals who have been prescribed pain management regimes by their treating physicians, and accordingly, a substantial part of the pharmaceuticals Community Drugstore dispenses are pain management pharmaceuticals. These customers will suffer substantial harm and pain if they are unable to fill their prescriptions.

## IV.    ARGUMENT

A preliminary injunction is properly issued where the movant has shown the following:

1.    a reasonable probability of success on the merits;

2.    irreparable injury to the movant by the denial of injunctive relief;

3.    that the non-moving party will not suffer even greater harm if the injunction is issued; and

4.    that granting preliminary relief is in the public interest.

See Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994); Olde Discount Corp. v. Tupman, 805 F. Supp. 1130, 1136 (D. Del. 1992); 2660 Woodley Road Joint Venture, v. ITT Sheraton Corp., No. 97-450, 1998 U.S. Dist. LEXIS 22825, at *4-5 (D. Del. Feb. 4, 1998). The last two factors need only be considered where relevant. In re: Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982); Gilbane Bldg. Co. v. Nemours Found., 568 F. Supp. 1085, 1092 (D. Del. 1983).

In this case, the four relevant factors all favor Community Drugstore, and Cardinal Health should be enjoined from terminating its supply of controlled substances until such time as Community Drugstore locates an alternative supply source.

### A.    Community Drugstore Can Establish A Reasonable Probability Of Success On The Merits

In order to establish a breach of contract claim, a party must show the existence of a valid contract supported by consideration, a breach of that contract and resulting damages. Johnson v.

Geico Cas. Co., 2007 U.S. Dist. LEXIS 72618, at * 11 (D. Del. Sept. 27, 2007); Carlson v.

Hallinan, 925 A.2d 506, 528-29 (Del. Ch. 2006).  Here, the existence and terms of the contract

cannot reasonably be disputed as the  Prime Vendor Agreement is in writing.[2]  As United Drug is

a buying cooperative, Community Drugstore is plainly a third-party beneficiary of the Prime

Vendor Agreement and executed a Certification to participate in the terms of this Agreement.

Under the Prime Vendor Agreement, each United Drug Member is required to purchase

95% of its pharmaceutical requirements from Cardinal Health through 2015.  (Prime Vendor

Agreement, ¶ 2.)  In exchange, Members receive discounts and rebates as well as preferred

pricing.  (Id. at ¶ 10.)  Further, Cardinal Health is required to "exercise all reasonable efforts to

provide each Member with an aggregate monthly … service level on Rx Products (i.e.,

pharmaceuticals) of at least 97%."  (Id. at ¶ 14.)  The Prime Vendor Agreement expressly

addresses the right to terminate and provides a very limited basis to do so.  Cardinal Health may

only terminate a Member for material default after affording a sixty day notice and opportunity

to cure, and may also terminate a Member immediately for payment defaults or credit

considerations.  (Id.)  There are no other permissible bases for termination.

In this case, Cardinal Health has failed and refused to supply Community Drugstore with

97% of its pharmaceutical needs, and indeed, has provided nothing but non-controlled substances

and a minimal amount of controlled substances since December 11, 2007.  This is a clear breach

of Cardinal Health's obligations under the Prime Vendor Agreement, and it threatens the very

existence of Community Drugstore.   Cardinal Health did so without providing notice to

Community Drugstore that it has somehow materially breached the Prime Vendor Agreement,

nor, frankly could it do so.  Even had Cardinal Health provided such notice, Community

Drugstore should have been given sixty days to cure the alleged defect.  Cardinal Health did not

---

[2] The Prime Vendor Agreement is a confidential document.  Community Drugstore will provide a copy of the Prime Vendor Agreement to the Court for in camera review in order to comply with the confidentiality provisions therein. Further, as a party to the Prime Vendor Agreement, Cardinal Health cannot complain that it is unaware of the terms.

afford Community Drugstore an opportunity to cure for any alleged breach, or even articulate a valid basis for termination under the contract.

To the extent Cardinal Health claims to be concerned with regulatory compliance, the Agreement does not permit termination on this basis. Even if a pharmacy's illicit sale of controlled substances supplied by Cardinal Health might be deemed a material breach of the Prime Vendor Agreement, there is absolutely no basis to contend that Community Drugstore has engaged in any such conduct. It is a legitimate pharmacy specializing in pain management and is not actually the subject of suspicion by Cardinal Health or the DEA. Indeed, if Cardinal Health believed that Community Drugstore had engaged in illicit sales, it would have been required to advise the DEA of what corrective action it has taken. Its failure to do so demonstrates that it had no such concerns. Moreover, Community Drugstore has communicated directly with DEA and has been informed that there are no investigations of its practices. (Gubernick Dec. at ¶ 23.) Cardinal Health's desire to short circuit regulatory compliance by terminating all pharmacies selling over arbitrarily designated volumes of controlled substances cannot be transformed into a material breach of the contract by Community Drugstore. See Novus Franchising, Inc. v. Taylor, 795 F. Supp. 122, 132 (M.D. Pa. 1992). This is particularly true in that Cardinal Health has been well-aware of Community Drugstore's business and its higher than average use of controlled substances for an extended period. Indeed, Cardinal Health encouraged Community Drugstore's expansion in this area.

Although Cardinal Health recently advised Community Drugstore that it is engaging in an appeals process to remove the ban on supplying controlled substances to Community Drugstore, this action in no manner cures or alleviates Cardinal Health's breach in that the Prime Vendor Agreement does not permit Cardinal Health to cease supplying Community Drugstore with controlled substances pending an appeal. Moreover, as described in greater detail below,

Community Drugstore has sustained and will continue to suffer irreparable harm to its goodwill and reputation while the purported appeals process continues.

Further, Community Drugstore has established a likelihood of success upon its defamation and product disparagement claims. When suppliers terminate a pharmacy based upon a reasonable suspicion that it is diverting controlled substances, they give notice to the DEA and this notice is generally forwarded to other suppliers. By giving such a notice of its termination of its supply relationship with Community Drugstore, Cardinal Health acted in a manner calculated to cause other suppliers to understand that there was a reasonable basis to conclude Community Drugstore was diverting controlled substances. As a result, other than AmerisourceBergen, other suppliers have refused to deal with Community Drugstore.

Community Drugstore can show a likelihood of success on the merits. The Prime Vendor Agreement is a valid contract supported by consideration, Cardinal Health breached the Prime Vendor Agreement by failing to supply Community Drugstore as required and by terminating Community Drugstore for no reason and in a manner calculated to damage its reputation in the community. Community Drugstore has met its burden of showing likelihood of success on the merits.

**B.      Community Drugstore Will Be Irreparably Injured If The Preliminary Injunction Is Denied**

While the typical remedy for the breach of a contract is money damages, courts will specifically enforce contractual obligations where the agreement's subject matter is unique or where the failure to comply with an agreement will result in losses that cannot adequately be compensated for in damages. Ecri v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (when a plaintiff's claim is based on breach of contract, irreparable injury may be found "(1)where the subject matter of the contract is of such a special nature of peculiar value that damages would be inadequate or (2) where because of some special and practical features of the

- 11 -

contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable"); In Re: Ben Franklin Hotel Assoc., 186 F.3d 301, 307-08 (3d Cir. 1999) (courts grant specific performance of a contract where the subject of the contract is so unique that money damages cannot be calculated); Toys "R" Us-Penn Inc. v. Discovery Zone, Inc., No. 95-2534, 1996 U.S. Dist. LEXIS 1183, at *6-7 (E.D. Pa. Feb. 6, 1996) (specific performance is generally considered an available remedy in breach of contract actions involving agreements to sell or lease real property "because of the assumption that a given piece of real property is unique"). As set forth previously, given the specialized regulation of controlled substances, Community Drugstore cannot adequately cover and will not be able to maintain a sufficient supply of the products on which its business depends unless it obtains injunctive relief. The subject matter of the Prime Vendor Agreement is unique because it provides access to products that Community Drugstore cannot readily replace.

Community Drugstore's right to injunctive relief is also supported by the fact that Cardinal Heath's tortious conduct in advising the DEA of its termination of Community Drugstore is partially responsible for the difficulties Community Drugstore is experiencing in covering. Cardinal Health communicated the notice of its attempt to terminate Community Drugstore in a manner reserved for advising that a pharmacy was being cut-off for suspicion of diverting controlled substances. As these notices are provided to other suppliers, Cardinal Health must have understood that other suppliers would believe that Community Health was being cut-off for suspicion of engaging in illicit sales.

Furthermore, Community Drugstore will be irreparably injured if does not receive immediate relief. "An injury is deemed irreparable if it cannot be adequately compensated by an award of damages." Greyhound Lines, Inc. v. Peter Pan Bus Lines, Inc., 845 F. Supp. 295, 300 (E.D. Pa. 1994). As Community Drugstore's existence will be threatened if it does not obtain

injunctive relief, it plainly faces irreparable harm.  <u>See</u> <u>Warren v. City of Athens, Ohio</u>, 411 F.3d 697, 711-12 (6th Cir. 2005) (finding that likely destruction of plaintiff's business and resulting "financial ruin qualifies as irreparable harm"); <u>Performance Unlimited, Inc. v. Questar Publishers, Inc.</u>, 52 F.3d 1373, 1382-83 (6th Cir. 1995) (finding irreparable harm in potential financial loss so great as to threaten the existence of plaintiff's business and collecting cases holding the same); <u>Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.</u>, 875 F.2d 1174, 1179 (5th Cir. 1989) (finding irreparable harm where a "judgment for damages, acquired years after Atwood's business has been obliterated would not be a meaningful remedy").  Community Drugstore cannot survive without an adequate supply of the products upon which its business is substantially based.  If Cardinal Health is permitted to enforce its termination, Community Drugstore will likely have to close its doors and, once this occurs, it will never reopen.

Even if it survives, Community Drugstore will lose a significant portion of its customer base if the notice of termination remains in effect.  Many of those customers whose prescriptions Community Drugstore cannot fill will go to other drugstores and a significant portion of those customers may never return.  Loss of customers has generally been recognized to be irreparable where it will be difficult to calculate the amounts the customers would have purchased if they had continued their relationship with the plaintiff.  <u>Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.</u>, 290 F.3d 578, 596 (3d Cir. 2002); <u>L&W Ins., Inc. v. Harrington</u>, No. Civ.A. 2730-VCP, 2007 WL 809512, at *12 (Del. Ch. Mar. 12, 2007) ("[t]he protection of substantial business relationships and goodwill are legitimate business interests whose impairment may give rise to irreparable harm."); <u>Tristate Courier & Carriage, Inc. v. Berryman</u>, No. C.A. 20574-NC, 2004 WL 835886, at *13 (Del. Ch. Apr. 15, 2004) (loss of client goodwill is irreparable harm); <u>Singh v. Batta Envtl. Assoc., Inc.</u>, No. Civ. A. 19627, 2003 WL 21309115, at *10 (Del. Ch. May 21, 2003) (irreparable harm includes erosion of goodwill and

loss of clients, referrals, and other prospective opportunities). In this case, it will be impossible to measure the monetary harm that will be caused to Community Drugstore because of the inherent uncertainty of establishing for how long any patient would continue to require medication. Each patient's condition is unique and, other than subpoenaing the medical records of each patient who does not return to Community Drugstore, which is impossible given that those records are privileged, there is no way of knowing whether dosages or the type of medication was changed or whether the patient was successfully weaned off of medication.

Likewise, damage to reputation is irreparable harm that can be redressed through injunctive relief. See Byrne v. Calastro, 205 Fed. Appx. 10, 16 (3d Cir. 2006) (damage to reputation constitutes irreparable harm in the context of preliminary injunction proceedings and affirming lower court's grant of preliminary injunction based, in part, upon potential harm to movants' reputation); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990) (explaining that grounds for irreparable injury include damage to reputation); Somerset Pharm., Inc. v. Shalala, 973 F. Supp. 443, 454-55 (D. Del. 1997) ("loss of reputation and goodwill can constitute irreparable harm," albeit not under the particular facts presented in that specific case); 2660 Woodley Road Joint Venture, 1998 U.S. Dist. LEXIS at *19 (finding that loss of control of reputation and goodwill constitute irreparable harm).

In this case, Community Drugstore will be also irreparably damaged by Cardinal Health's unilateral and sudden termination of the supply of controlled substances. Community Drugstore's primary business is supplying medications in compliance with valid and proper prescriptions to persons needing those medications for pain management. Clearly, many patients would not wish to continue dealing with a pharmacy that suddenly cannot supply controlled substances under circumstances suggesting that it has engaged in illegal conduct. Many doctors would also likely be unwilling to refer patients to a pharmacy under such circumstances.

- 14 -

Moreover, Community Drugstore's customers, and the doctors who prescribe their medications, know the company as a reliable, consistent and convenient source for their needed medication. If Community Drugstore suddenly cannot meet its customers' needs, and the customers therefore unnecessarily suffer increased pain and discomfort, Community Drugstore will lose considerable customer goodwill. A pharmacist is supposed to be a trusted and reliable part of medical treatment, not the person who contributes to the patient's suffering.

### C. Granting Preliminary Relief Will Not Result In Greater Harm To Cardinal Health

It is difficult to imagine what harm Cardinal Health could suffer if Community Drugstore were granted injunctive relief. If an injunction were granted, it would simply be required to resume what has been a profitable supplier relationship with Community Drugstore. Cardinal Health cannot reasonably argue that supplying Community Drugstore may expose it to enforcement action by the DEA given the complete lack of any evidence that the DEA questions the legitimacy of Community Drugstore's business. In any event, the DEA certainly could not pursue enforcement action against Cardinal Health for complying with a federal court injunction.

### D. Granting Preliminary Relief Is In The Public's Interest

If the injunction is issued, Cardinal Health will be required to provide controlled substances to Community Drugstore, which in turn will be able to provide the required medications to its customers in accordance with the Controlled Substances Act. If the injunction is not granted, however, Community Drugstore will not be able to service its customers and those customers will suffer greatly if they are not able to obtain appropriately prescribed medications for their conditions.

- 15 -

## V.    CONCLUSION

Accordingly, this Court should grant a preliminary injunction enjoining Cardinal Health from terminating the supply of controlled substances to Community Drugstore until such time as Community Drugstore has secured an alternative supply source.

Dated:  December 17, 2007

_David A. Felice_

Sean Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
sbellew@cozen.com
dfelice@cozen.com

*Counsel for Plaintiff,*
*Community Drugstore, LLC*

OF COUNSEL:
Robert W. Hayes, Esq.
Sarah E. Davies, Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
215-665-2000

- 16 -